**ARMSTRONG et al. v. NEW LA PAZ GOLD MINING CO.**

No. 9167.

Circuit Court of Appeals, Ninth Circuit.

Nov. 8, 1939.

454

Wilson & Wilson and W. Francis Wilson, all of Phoenix, Ariz., for appellants.

Bradner & Weil by Jerold E. Weil, of Los Angeles, Cal., for appellee.

Before WILBUR, DENMAN, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Complaint was brought in the District Court by the appellee corporation against "Aikman Armstrong, Wallace Mark Plummer, B. W. Vallet and Charles Burr McDonald, doing business as Palo Verde Commercial Company, Defendants", claiming damages for conversion of personal property. The Complaint alleges that the plaintiff is a corporation organized under and by virtue of the laws of the State of Arizona; that the defendants Plummer and Armstrong are citizens of the State of California; and that the defendant McDonald is a citizen of the State of Arizona. Upon motion of the plaintiff, before answer, the action was ordered dismissed as to McDonald and judgment to such effect was duly entered. No appeal has been taken therefrom. After trial, which was had without a jury, judgment went in favor of the plaintiff and against all remaining defendants, who appeal. The appeal appears also to include the dismissed defendant McDonald, but as he is not a party to the judgment appealed from such attempted appeal is dismissed. The appeal on its face is also from the order denying defendants' motion for a new trial. We shall, of course, notice only the appeal from the judgment.

Appellants attack the jurisdiction of the District Court to entertain the action or to render any judgment, contending that the action is against the copartnership, and that McDonald was therefore an indispensable party. If this were true it would follow that there would not be the diversity of citizenship necessary to confer jurisdiction on the federal courts. However, upon this point we deem it sufficient to say that the defendants herein are sued individually upon their joint and several liability for the alleged tort. That such joint and several liability exists in Arizona is clear from Revised Code of Arizona, 1928, Section 3836 and the case of Evans v. Colorado Sav. Bank, 41 Ariz. 504, 19 P.2d 1062. We believe that Arizona would follow the general rule, as well stated by the court in Murphy v. Coppieters, 136 Cal. 317, 68 P. 970, 971, as follows:

"Nor was it necessary to bring suit against appellants as copartners; for, when a cause of action for tort exists against a copartnership, the several partners may be sued individually, if so preferred. We quote from Lindley on Partnership, at page 283: 'Supposing a tort to be imputable to a firm, an action in respect to it may be brought against all or any of the partners. If some of them only are sued, they cannot insist upon the other partners being joined as defendants; and this rule applies even where the tort in question is committed by an agent or servant of the firm, and not otherwise by the firm itself.' "

Defendants' next point is the claimed insufficiency of the monetary value involved in the action to confer jurisdiction on the District Court. The damages alleged in the complaint amount to $7,900 with interest, but the court fixed the value of the property at the time of the conversion at $2,880 and awarded damages in this sum plus interest in the amount of $358.56, and for costs of suit. It is argued that such finding as to value establishes that plaintiff's claim for damages in the sum of $7,900 was but colorable and does not act to establish jurisdiction. The facts show that shortly prior to the alleged conversion plaintiff had entered into an agreement, which was never consummated, to sell the property in question to one B. Bernson at a price which subsequently proved to be $2,400. On the other hand, a Mr. Leytus, a dealer in second-hand pipe and oil well supplies, testified to a value per foot which would amount to around $7,800 for the pipe alleged to have been converted. Furthermore, the defendant Armstrong himself testified that his company sold the pipe in April and May of 1937 (four or five months after the alleged conversion) for $.45 per foot, or for a total amount of approximately $4,300.

The Supreme Court in St. Paul Mercury Ind. Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845, gives the rule governing dismissal for want of jurisdiction in cases brought in the Federal Court, as follows: "* * * the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. * * *"

Such legal certainty does not appear in the instant case.

We turn now to a consideration of the merits of the case.

Plaintiff was the owner of certain unpatented mining claims located in Yuma County, Arizona. In 1920 it laid underground a pipe line of some 10,000 feet. In March, 1934, one Moore leased the claims and the pipe system, and in April, 1934, assigned his interest therein to David Mines, Inc. The lease and the assignment were duly recorded. David Mines, Inc., abandoned the lease in June, 1934, but no notice thereof was recorded. Personal property taxes for the years 1934 and 1935 were assessed against the property in the name of David Mines, Inc. The plaintiff had made no returns of such property to the tax assessor for either of said years, and the taxes remained unpaid. In 1936 the County Assessor gave notice to the listed statutory agent of David Mines, Inc., and to the Corporation Commissioner of Arizona, as statutory agent of the plaintiff since plaintiff's appointed agent had died and no re-appointment had been made, and seized the property in question. He thereafter held a purported tax sale upon the premises where the pipe line system was located. The pipe line, including two boilers, was sold at such tax sale on April 10, 1936 to one Tom Young for $52.36, this figure being the sum of $36.86 taxes (should have been $36.84) and $15.50 costs. In December, 1936, defendants acquired such title as Tom Young had, and acting under claim of right entered upon the mining claims and removed the pipe, with its couplings and valves, from the premises. This action for conversion followed. Defendants claim a valid title to the pipe, etc., by virtue of the tax sale to Young and the subsequent transfer of the property from Young to themselves. It is therefore necessary to examine into the validity of the tax sale.

Several grounds of invalidity are urged by the appellees. One relates to the notice of sale given by the Assessor.

Section 3081, Revised Code of Arizona, 1928, provides in part, as follows: "* * * the assessor shall seize sufficient of said personal property to satisfy the taxes and costs, and shall post a notice of such seizure, with a description of the property, in three public places in the county, one of which shall be in the precinct where it is seized, and shall, at the expiration of three days sell at public auction, at the time and place mentioned in the notice, to the highest bidder, for cash, a sufficient quantity of said property to pay the taxes and expenses incurred and issue to the purchaser a certificate of sale."

The evidence is uncontradicted that the only notices posted by the assessor were as follows: One notice was posted at the Court House in Yuma, Arizona, and one notice was posted at the Post Office in Quartzsite, Arizona, both of course being public places. The third required posting was made by affixing the notice on one of the boilers on plaintiff's property, eighteen miles from the nearest town, and it is claimed that such place of posting was not a public place as required by the statute.

We find no Arizona cases defining the term "public place", but cases arising in other jurisdictions are quite uniform in their definitions, and we are certain that Arizona would follow. We quote the definition contained in Words and Phrases, Second Series, Volume 4, p. 23: "The term 'public place,' as used in St.1898, § 1130, providing for the posting of tax sale notices in at least four public places in the county, was used in its ordinary common sense to designate a place where the public resorts, so that the exposure of the document was likely to give notice. Bauchier v. Hammer, 123 N.W. 132, 134, 140 Wis. 648."

We do not hesitate to declare that the statute has not been complied with and that defendant's grantor derived no title from the purported sale and the grantee in turn derived no title from said grantor, for "A statute requiring the notices of tax sales to be posted at certain places, or at public and conspicuous places in the county

is mandatory, and failure to obey its directions will invalidate the sale." 61 C.J., at page . 186.

In this view of the case, it is unnecessary for us to pass upon the other grounds of invalidity which are urged by the appellees.

■ There remains, however, an additional point raised by the appellant, involving plaintiff's right to maintain this action. It is urged that the trial court erred in finding plaintiff to have been the owner and in possession of said personal property. Appellant relies upon the contract of sale entered into between the plaintiff and Bernson above referred · to, and argues therefrom that Bernson was the own¬ er and the only person entitled to sue for the conversion of the property. To answer this argument it is necessary only to point out that ·under the terms of . the · contract the transaction was not to be complete until the buyer had disconnected, taken up, transported and removed the pipe· from the premises. At that point the escrow agent was to deliver to the buyer the bill of sale upon receipt of the entire purchase price agreed upon. The transaction was never consummated. Delivery was never made to the buyer, Bernson, and the plaintiff was prevented from making such delivery by reason of the defendants' acts. . In such circumstances, with both title and possession still in the plaintiff, there is no merit in the appellants' contention that Bernson alone was the proper party plaintiff.

Affirmed.