[Civ. No. 12090. Second Appellate District, Division Two.—March 2, 1939.]

CONRAD SCHUBKEGEL, a Minor, etc., et al., Appellants, v. E. B. DUNN, Respondent.

Irwin H. Roth and Horace W. Danforth for Appellants.

C. F. Jorz for Respondent.

CRAIL, P. J.—This is an appeal by plaintiffs from a judgment entered upon the verdict of a jury in a case arising out of a motor vehicle collision. It is the contention of the plaintiffs that the court erred in giving certain instructions to the jury and in refusing other instructions and in its conduct and demeanor before the jury during the progress of the trial. It is our duty under the circumstances to examine the evidence in the light most favorable to the defendant.

The accident occurred at the intersection of Twenty-fourth and Catalina Streets between an automobile owned by the defendant and a motorcycle owned and driven by one who is not made a party to the action. The plaintiff, Conrad Schubkegel, was a passenger on the motorcycle. The defendant was driving his automobile in a northerly direction on Catalina Street in the lane of travel 10 feet out or west of the curb on his right, and when he entered the intersection he was going at a speed of 15 or 17 miles per hour. Before reaching the southerly curb line of Twenty-fourth Street, the defendant looked to his left and observed that there was no eastbound vehicular traffic. He then looked to his right and observed a motorcycle upon which plaintiff was riding. The motorcycle was then 70 or 100 feet east of Catalina Street

and proceeding westerly on Twenty-fourth Street at a speed of 30 miles per hour. The defendant observed nothing about the manner in which the motorcycle was being driven that caused him to drive other than normally across the street, so he continued through the intersection, but another occupant in defendant's automobile did observe that when the motorcycle was 80 feet east of the intersection both the boys on the motorcycle were laughing, and the driver of the motorcycle had his head turned to the side or south. When the front end of defendant's automobile was crossing the streetcar rails on the north half of Twenty-fourth Street, the defendant heard quite a noise to his right and again looked right and saw the motorcycle within a few feet away. The defendant immediately applied the brakes and brought his automobile to a complete stop before the impact. The motorcycle swerved to the right or north, and after striking the front bumper and right front fender of the defendant's automobile came to a stop near the northwest corner of the intersection. There was only one seat on the motorcycle and two persons were riding on said motorcycle. The plaintiff was riding the seat and the owner and driver was forward, riding the gasoline tank. There was introduced into evidence section 80.27 of the Los Angeles Municipal Code, which reads as follows: ''Riding on motorcycles and bicycles: The person operating a motorcycle or bicycle shall not ride other than upon the permanent and regular seat attached thereto, nor carry any other person upon such motorcycle or bicycle other than upon a firmly attached seat to the rear of the operator, nor shall any person ride upon a motorcycle or bicycle other than as above authorized.''

█ The court gave an instruction which read to the effect that if you find from the evidence that the operator of the motorcycle and the plaintiff Conrad Schubkegel violated the foregoing ordinance, and if you find that such violation, if any, was a proximate and contributing cause of the accident, then the plaintiff cannot recover.

The plaintiffs' first and primary contention is that the court erred in giving this instruction because the plaintiff's position on the motorcycle had nothing whatever to do with the occurrence of the accident and that from the manner of the collision such plaintiff would have been injured in any event, whatever character of seat on the motorcycle he might

have been occupying. In our view the questions whether in view of the fact that there was only one permanent seat on the motorcycle and that by reason of the cramped position which the driver was forced to occupy in front of his regular holds and leverages, the handling of the motorcycle was seriously impeded and such impediment was apparent to an ordinarily prudent person seated in the position of the plaintiff, were questions of fact to be submitted to the jury. The instruction itself was proper and followed the rule announced in *Lorry* v. *Englander etc. Co.*, 108 Cal. App. 116 [291 Pac. 467]. (See, also, *Schultheiss* v. *Los Angeles Ry. Corp.*, 11 Cal. App. (2d) 525 [54 Pac. (2d) 49], and *Reeves* v. *Lapinta*, 25 Cal. App. (2d) 680 [78 Pac. (2d) 465].)

█ It was not error to give the instruction on unavoidable accident. (*Sitkei* v. *Ralphs Grocery Co.*, 25 Cal. App. (2d) 294, 297 [77 Pac. (2d) 311]; *Pearce* v. *Elbe*, 98 Cal. App. 101, 105, 106 [276 Pac. 389].)

The plaintiffs contend that the court erred in giving several other instructions and in the refusal to give certain instructions which were requested by the plaintiffs. But in our view said instructions were correctly given and the refusal to give the instructions asked for by the plaintiffs was proper either because they are not correct in law or because the theory presented by them was correctly given elsewhere.

█ The court admitted into the evidence over the objection of the plaintiffs the defendant's personal report made to the police department after the accident. The plaintiffs contend that this was reversible error, citing section 488 of the Vehicle Code, which provides in effect that no such report shall be used as evidence in any trial arising out of an accident, and upon the further ground that no one may make evidence for himself. The only part of the report which it is claimed was prejudicial was the statement, "He [defendant] was practically stopped at time of impact." It was error to admit this report into the evidence, but not reversible error. There was other substantial evidence establishing the fact that the defendant was in fact stopped at the time of impact. The defendant himself testified, "I stopped. I believe I was at a complete stop at the time of the impact." And Mrs. Dunn, who was an occupant of defendant's car, testified in this regard that, "I would say our car was absolutely still." The jurors would understand that the defend-

ant's statement in the report was no better than and did not improve upon his statement on the witness stand. The admission of such erroneous testimony would not justify a reversal of the case. (*Perumean* v. *Wills*, 8 Cal. (2d) 578 [67 Pac. (2d) 96] ; *Conner* v. *East Bay etc. Dist.*, 8 Cal. App. (2d) 613 [47 Pac. (2d) 774, 48 Pac. (2d) 982].)

Next the plaintiffs contend that the attitude and utterances of the court throughout the trial were prejudicial to the plaintiffs' case and deprived them of a fair trial by conveying to the jury an impression of the court's bias and opinion against them and their case and their contentions therein. The plaintiffs do not show that any of the rulings or remarks of the trial court were excepted to or that a request was made to the trial court to instruct the jury to disregard the alleged erroneous remarks. This question cannot be raised for the first time on appeal. (*Sitkei* v. *Ralphs Grocery Co., supra.*) There is little in the court's conduct of which to complain. If the court erred in this regard his attention should have been called to it and a request made for him to instruct the jury to disregard his remarks. Such an instruction would have obviated the alleged misconduct.

Finally, the plaintiffs complain because the court sustained objections not interposed by counsel for the defendant. This objection is not tenable. It is the law that the court may in the interests of justice exclude incompetent and inadmissible evidence. (*Bodholdt* v. *Garrett*, 122 Cal. App. 566 [10 Pac. (2d) 533] ; *Parker* v. *Smith*, 4 Cal. 105.)

Judgment affirmed.

Wood, J., and McComb, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 1, 1939.